UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

BRIDGETT DAHL,

    Plaintiff

v.

JACOB MANDRUSIAK,

    Defendant

Case No.: 2:18-cv-02225-APG-DJA

**Order Regarding Motions in Limine**

[ECF Nos. 80, 81, 82, 97]

    The parties have filed four motions in limine to exclude evidence at trial. I resolve them below.

**Defendant's Motion in Limine #1 (ECF No. 80)**

    Defendant Jacob Mandrusiak seeks to exclude evidence that he consumed alcohol on the day in question. ECF No. 80. He argues that such evidence is admissible only if there is also evidence of impairment, which there is none. Alternatively, he argues that the unfair prejudice of such evidence substantially outweighs any probative value. Plaintiff Bridgett Dahl responds that the evidence shows that Mandrusiak consumed some alcohol earlier in the day and at Topgolf before he started hitting balls, but the testimony is unclear about how much he drank before he took the fateful swing. She also argues that alcohol consumption may cause risks beyond those inherent to golf, so it is a jury question whether his alcohol consumption breached his duty. Alternatively, she contends that she should be able to use the alcohol consumption as impeachment of Mandrusiak's memory or the reliability of his perceptions that night.

    Mandrusiak testified that he had an alcoholic beverage earlier in the day, but it did not taste very good so he had only about half of it. ECF No. 80-1 at 3. He testified that he "started drinking once we got to our booth [at Topgolf] or maybe just had a sip before." *Id.* at 6. When

asked how much beer he had before actually starting to hit golf balls, Mandrusiak stated he had a "couple sips out of my beer." *Id.* Another member of his party testified she thought Mandrusiak had about half a glass of beer. ECF No. 80-2 at 2. Other members of the group were aware that beer was ordered but did not know how much Mandrusiak had to drink. There is no testimony specific to how much alcohol Mandrusiak had before the fateful swing. There is no evidence anyone thought Mandrusiak was drunk or that he exhibited behavior consistent with being impaired.

In *FGA, Inc. v. Giglio*, the Supreme Court of Nevada stated that "a party's possible intoxication may be probative of the issues of causation and comparative negligence." 278 P.3d 490, 499 (Nev. 2012). But intoxication evidence "should not be admitted if there is no support for finding a causal link between the alleged impairment and the injury." *Id.* But the court also stated that evidence of intoxication is "relevant to a person's ability to perceive and, thus, may be admissible to attack a witness on [his or] her ability to perceive and remember." *Id.* (quotation omitted). This reasoning seems disjointed, disallowing evidence of intoxication absent a causal link to the injury, yet finding such evidence relevant to a witness's ability to perceive events.

I am not bound by the reasoning in *FGA*. Even in a diversity case, the Federal Rules of Evidence ordinarily apply unless the state evidence rule at issue is a rule of substantive state law. *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003). *FGA*'s ruling regarding the admissibility of alcohol consumption is not substantive.[1] Here, there is little evidence regarding

---

[1] *See Spencer v. Young*, 495 F.3d 945, 950 (8th Cir. 2007) (acknowledging that Arkansas had a similar rule, but concluding the Federal Rules of Evidence governed even in a diversity case and "evidence of alcohol consumption may be relevant under the federal rules to the question of whether a driver contributed to a collision"); *McInnis v. A.M.F., Inc.*, 765 F.2d 240, 246 (1st Cir. 1985) (concluding the Federal Rules of Evidence governed despite a similar Rhode Island rule because the state law rule was "merely a more focused relevancy rule, similar in nature to Federal Rules of Evidence 406 through 412, which represent presumptions that undue

Mandrusiak's alcohol consumption. He apparently had about half of an alcoholic beverage in the afternoon and a few sips of beer before he started hitting golf balls. There is an evidentiary gap about how much he drank before the injury occurred. Alcohol consumption is relevant under Federal Rule of Evidence 401, both as to Mandrusiak's potential negligence in increasing the inherent risk as well as his ability to perceive and remember. Evidence that a person of legal drinking age had a few drinks at a social occasion does not raise the prospect of unfair prejudice substantially outweighing the probative value of that evidence. It is for the jury to resolve how much Mandrusiak had to drink and whether that had any impact on either his actions or his ability to perceive and remember. I deny the motion.

**Defendant's Motion in Limine #2 (ECF No. 81)**

Mandrusiak seeks to exclude testimony from other people in his group about whether the golf club grips were slippery. He contends the only relevant question is what he knew or could have known at the time, that he did not believe or know they were slippery, and no one told him before the incident that they thought the grips were slippery. He argues what others thought about the grips is irrelevant because they never expressed those opinions to him before the incident. Alternatively, he argues the testimony should be excluded under Rule 403 because having to go through the issue with every witness will lead to the innuendo that the grips were slippery. Dahl responds that there is ample evidence that the clubs were slippery and Mandrusiak knew or should have known it.

---

prejudice shall occur in certain situations" and the state law rule "cannot reasonably be considered substantive" because it is "strictly a rule of admissibility" that "could not rationally affect private ordering or encourage forum shopping"); *Levitt v. H. J. Jeffries, Inc.*, 517 F.2d 523, 525 (7th Cir. 1975) (holding Federal Rules of Evidence governed despite a similar Illinois rule, and trial court erred by excluding evidence of alcohol consumption in car accident case).

I deny the motion. Whether the club grips were slippery and whether Mandrusiak, who was an experienced golfer, knew or should have known that are issues for the jury. Several witnesses testified that the grips were slippery. ECF Nos. 81-2; 81-3; 81-5; 81-6; 81-7. Although it is not clear that anyone expressed a view to Mandrusiak before the incident, the group was sharing clubs and Mandrusiak is seen on video wiping his hands on his pants just before the incident. Moreover, Mandrusiak was asked whether he felt that his grip was slippery "when [he was] using the clubs at Topgolf that night," and he responded "[a] little bit" and that the grip "[j]ust seemed a little slippery," although he stated he was not sure if he got that sense before or after the incident. ECF No. 45-4 at 19. The jury will have to determine whether the clubs were slippery and, if so, whether Mandrusiak knew or should have known that before the incident. The other witnesses' testimony is probative and there is nothing unfairly prejudicial about the witnesses testifying about their perceptions of whether the clubs were slippery and whether that information was discussed among the group that night.

**Defendant's Motion in Limine #3 (ECF No. 82)**

Mandrusiak seeks to preclude Dahl from asking him questions regarding who has responsibility to control a golf club. I grant this motion and exclude this line of questioning. I previously ruled that a golfer losing control of a club is a risk inherent to golf and that Mandrusiak is liable only if he breached his duty by increasing this inherent risk. Dahl does not explain how such questions are probative on the issue of whether Mandrusiak increased the risk. Questioning Mandrusiak on who is responsible for controlling a golf club is not relevant to the only remaining issue, and it risks the unfair prejudice of leading the jury to conclude he must be liable because he is the golfer swinging the club at the time of the incident.

/ / / /

**Plaintiff's Motion in Limine (ECF No. 97)**

Dahl seeks to exclude YouTube videos of incidents where people lost control of golf clubs, and incident reports at Topgolf where golfers purportedly lost control of their clubs. Mandrusiak concedes the videos are inadmissible so I grant the motion as to the videos.

As to the incident reports, Mandrusiak argues the reports are admissible to support his "empty chair defense" by which he intends to argue that Topgolf is liable because it failed to put up barriers between the golf bays and the bar area. He contends the records are not hearsay because they are not being offered for the truth of the matter asserted in the reports. Instead, he intends to offer the reports to show Topgolf was aware that golfers were reporting losing their grips but took no action to protect against errant clubs flying into the bar area.

Nevada Revised Statutes § 41.141 "prevents admission of evidence in support of a 'comparative fault' or apportionment analysis of [a] nonparty's relative culpability." *Banks ex rel. Banks v. Sunrise Hosp.*, 102 P.3d 52, 67 (Nev. 2004) (en banc). Thus, Mandrusiak cannot make a comparative negligence argument with respect to Topgolf. However, "[n]othing in NRS 41.141 prohibits a party defendant from attempting to establish that either no negligence occurred or that the entire responsibility for a plaintiff's injuries rests with nonparties, including those who have separately settled their liabilities with the plaintiff." *Id.*

The incident reports are not relevant, even considering Mandrusiak's empty chair defense. If the jury finds Mandrusiak was negligent by increasing the inherent risk, then Topgolf will not be entirely responsible for Dahl's injuries, so the evidence would not be allowed under *Banks* because Mandrusiak cannot ask the jury to apportion fault between him and nonparty Topgolf. If the jury finds Mandrusiak was not negligent, then he wins regardless of whether Topgolf should have installed barriers. Either way, evidence regarding Topgolf's alleged

knowledge and actions are irrelevant to the issue before the jury.  I therefore grant Dahl's motion to exclude the YouTube videos and Topgolf incident reports.

I THEREFORE ORDER that the defendant's motions in limine #1 and #2 **(ECF Nos. 80, 81) are denied.**

I FURTHER ORDER that the defendant's motion in limine #3 **(ECF No. 82)** and the plaintiff's motion in limine **(ECF No. 97) are granted**.

DATED this 21st day of April, 2021.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE